UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ANTHONY CARTER,

Plaintiff,

v.

RALPH R. SHELTON, et al.,

Defendants.

Case No. 18-cv-02035-PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

Re: Dkt. No. 23

This is a civil rights case brought pro se by a state prisoner under 42 U.S.C. § 1983. His claims arise from his detention in San Quentin State Prison ("SQSP"). Plaintiff alleges that his due process rights were violated after he was found guilty of indecent exposure and as part of his punishment defendants falsely labeled him as a sexual predator by putting a sign on his cell indicating he was guilty of indecent exposure. He also alleges that defendants failed to protect him from an assault by other inmates. Defendants have a filed a motion for summary judgment asserting that plaintiff failed to administratively exhaust his failure-to-protect claim, and a motion to dismiss arguing that his due process allegations fail to state a claim. Plaintiff filed an opposition, and defendants filed a reply. For the reasons set forth below, the motions are granted.

## MOTION FOR SUMMARY JUDGMENT

**Legal Standard**

"The PLRA [Prison Litigation Reform Act] mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171

(9th Cir. 2014) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1168. The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust. *Id.* at 1172. If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* The ultimate burden of proof remains with the defendant, however. *Id.* If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

During the relevant time, the California Department of Corrections and Rehabilitation ("CDCR") provides any inmate under its jurisdiction the right to appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). To initiate an appeal, also referred to as a grievance, the inmate or parolee must submit a CDCR Form 602 describing the issue to be appealed to the appeals coordinator's office at the institution for receipt and processing. *Id.* § 3084.2(a)-(c). Inmates must submit their initial appeal within 30 calendar days of "[t]he occurrence of the event or decision being appealed, or upon first having knowledge of the action or decision being appealed." *Id.* at § 3084.8(b). The appeal must name "all staff member(s) involved" and "describe their involvement in the issue." *Id.* § 3084.2(a)(3). The CDCR appeal process consists of three formal levels of appeals: (1) first formal-level appeal filed with one of the institution's appeal coordinators, (2) second formal-level appeal filed with the institution head or designee,

2

and (3) third formal-level appeal filed with the CDCR director or designee. *Id.* §§ 3084.7, 3084.8. A prisoner exhausts the appeal process when he completes the third level of review. *Id.* § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal. Code Regs., tit. 15, § 3084.1(b).

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Woodford*, 548 U.S. at 93. Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id*. at 90.

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *Id*. at 1859; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]," *Id*.; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," *Id*. at 1860.

**Facts**

The following facts are undisputed except where indicated otherwise:

Plaintiff was housed at SQSP during the relevant time and alleges in the complaint that on October 21, 2015, defendant Shelton conducted a disciplinary hearing and found

3

plaintiff guilty of indecent exposure. Complaint at 7. Due to the guilty finding for indecent exposure, defendant Fitzsimmons allegedly placed an "IEX" sign on plaintiff's cell door. *Id.* Plaintiff alleges that on October 27, 2015, he was attacked on the yard by two inmates who just a few weeks earlier, according to plaintiff, had attacked another inmate whose cell door displayed an IEX sign.

While incarcerated at SQSP, plaintiff exhausted only one administrative appeal: IAB Case Log 1711377. Motion for Summary Judgment ("MSJ"), Voong Decl. ¶ 6, Ex. A. Plaintiff submitted six administrative appeals at SQSP that were screened out at the third and final level of review and were not exhausted: IAB Case Logs 1508424, 1510467, 1705362, 1706632, 1708742 and 1712806. *Id.* Plaintiff also submitted two administrative appeals at SQSP that were never submitted to the third level of review: SQ-A-16-00055 and SQ-E-16-01125. Maxfield Decl., Exs. A-C. Out of these nine appeals that plaintiff submitted, three appeals could potentially relate to his failure to protect claim: IAB Case Logs 1508424 and 1510467; and SQ-16-00055. Voong Decl., Exs. C, D; Maxwell Decl. Ex. B.

IAB Case Log 1508424 addressed the allegation in this action that plaintiff was attacked on October 27, 2015. Voong Decl., Ex. C. The appeal was dated November 4, 2015 but was sent by plaintiff directly to the third level of review on January 11, 2016. *Id.* at 41, 56 of 237. This appeal was rejected because plaintiff bypassed the required lower levels of review. *Id.* at 40 of 237. Plaintiff was advised that he could not appeal the rejected appeal but could resubmit the appeal. *Id.* There is no record of the appeal being resubmitted. Maxfield Decl., Ex. A.

IAB Case Log 1510467 addressed plaintiff's October 21, 2015, rules violation hearing for indecent exposure but did not address the alleged October 27, 2015, attack. Voong Decl., Ex. D at 59-62 of 237. Plaintiff submitted this appeal to the first level of review on November 17, 2015 and alleged that his due process rights were violated at the hearing and that he was denied visiting privileges with his wife. *Id.* He did not mention the placement of the IEX sign on his cell door or that he was attacked. *Id.* The

4

appeal was partially granted at the second level of review and a new rules violation hearing was ordered to be held. *Id.* at 63 of 237. The appeal was cancelled at the third level because the issues had been resolved. *Id.* at 58 of 237.

SQ-16-00055 was submitted to first level of review on January 12, 2016. Maxfield Decl., Ex. B at 7 of 36. The appeal concerned plaintiff's transfer to a different cell on December 13, 2015; the placement of the IEX sign on his cell door; the denial of visiting privileges; and plaintiff's allegation that an unidentified staff member had identified plaintiff as a sex offender to other inmates. *Id.* at 7-8 of 36. The appeal was screened out and cancelled at the first level of review because plaintiff did not meet the 30-day time limit for filing an appeal. *Id.* at 14 of 36.

**Analysis**

Plaintiff does not dispute the facts set forth above. He appears to argue that because he submitted IAB Case Log 1508424 to the third level of review and it contained his failure-to-protect claim that he fully exhausted the claim. Yet it is undisputed that this appeal, while discussing the failure-to-protect claim, was rejected because plaintiff bypassed the required lower levels of review. It is also undisputed that plaintiff was advised that while he could not appeal the rejected appeal he could resubmit the appeal, but he failed to do so.[1]

The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Woodford*, 548 U.S. at 93. This requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83-84. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. A prisoner must complete the administrative review process

---

[1] This appeal was prepared and dated November 4, 2015, but plaintiff sent it directly to the third level of review on January 11, 2016. It is not clear why plaintiff delayed submitting this appeal. It is possible this appeal could also have been rejected as untimely.

5

in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *See id.* at 87; *see also Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that, to exhaust remedies, a prisoner must file appeals in the place, and at the time, the prison's administrative rules require).

It is undisputed that plaintiff failed to comply with the procedural rules by skipping the lower levels of review and submitting IAB Case Log 1508424 directly to the final level of review. Plaintiff was aware of the proper manner in which to exhaust an appeal because he had done so, successfully, as recently as immediately after the incidents in this case occurred. For example, he properly submitted IAB Case Log 1510467 regarding the allegation that his due process rights were violated at the hearing and that he was denied visiting privileges with his wife. Prison staff granted his appeal in part and ordered a new rules violation hearing for this appeal, IAB Case Log 1510467. Plaintiff was thus aware of the procedural rules for filing an appeal. He failed to follow these procedures for his failure-to-protect claim, IAB Case Log 1508424. Defendant has met his burden in showing that the failure-to-protect claim was not exhausted.

Even if the court were to assume, because it was partially granted, that IAB Case Log 1510467 was properly exhausted even though it did not proceed to the third level, it did not reference the October 27, 2015 attack. IAB Case Log 1510467 involved plaintiff's due process claims regarding the rules violation hearing and visiting privileges.

In *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit noted that "the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* at 1120. In *Griffin*, the plaintiff failed to mention in his grievance that the remedy to his problem, which had been ordered by a prison nurse, had been ignored by the prison staff. *Id.* at 1118-19. As a result, the prison officials who were aware of the nurse's order reasonably believed that the order had solved the problem. In view of these facts, the Ninth Circuit concluded that the plaintiff failed to properly exhaust his administrative remedies because he did not provide notice of the prison staff's alleged disregard of the nurse's order and the prison was never

6

alerted "to the nature of his problem." *Id.* at 1121.

Similar to *Griffin*, if IAB Case Log 1510467 is assumed to have been properly exhausted, plaintiff still failed to properly alert prison officials to the nature of his grievance. It would be difficult for prison officials to determine from this appeal that plaintiff was also alleging that prison staff failed to protect him from an assault. Administrative remedies may not be exhausted where the grievance, liberally construed, does not have the same subject and same request for relief. *See Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (grievance that complained of visitation restrictions and did not mention an assault or theorize that the visitation restriction imposed was related to the assault, was insufficient to put prison officials on notice that staff conduct contributed to the assault). IAB Case Log 1510467, assuming if it was properly exhausted, does not demonstrate the plaintiff exhausted the failure-to-protect claim.[2]

To the extent plaintiff argues that administrative remedies were unavailable to him, defendants are still entitled to summary judgment. An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates" *Ross* 136, S. Ct. at 1859-60; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]" *Id*.; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.

None of these factors are met in this case. At the same time that plaintiff failed to follow procedures for the failure-to-protect claim, he properly followed procedures concerning the due process claim, for which he received partial relief in the form of a new

---

[2] Plaintiff's only exhausted appeal, IAB Case Log 1711377, concerned a May 2017 rules violation hearing that is distinct from this case. Voong Decl., Ex. B. Of plaintiff's remaining appeals, IAB Case Log 1705362 concerned the denial of parole; 1706632 concerned a March 2017 rules violation report; 1708742 concerned a May 2017 rules violation hearing; and 1712806 concerned a June 2017 rules violation report. *Id*., Exs. E-H. SQ-16-01125 concerned a property issue. Maxfield Decl., Ex. C.

rules violation hearing. Plaintiff also filed many appeals before and after the incident that were reviewed by prison staff.

When plaintiff submitted IAB Case Log 1508424, the failure-to-protect claim, directly to the third level on January 11, 2016, he included a letter stating that prison officials were refusing to acknowledge or process his appeals. Complaint at 19. He did not elaborate in that letter or in his opposition to summary judgment about how specifically his attempts to properly submit his appeal were thwarted by prison officials. Moreover, the very next day, January 12, 2016, plaintiff properly submitted appeal SQ-16-00055 to the first level of review, where it was addressed by prison officials. Plaintiff does not explain how SQ-16-00055, as well as many of his other appeals, were reviewed by prison officials if these officials were refusing to acknowledge or process his appeals. Plaintiff has not provided specific allegations to support his argument that he had attempted to properly submit his failure-to-protect claim but his attempts to do so were thwarted. The facts of this case do not demonstrate that any actions taken by prison administrators impeded the grievance process.

Plaintiff also argues that administrative remedies were unavailable due to threats of retaliation. The threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies. *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

> To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." *Id.* at 987. "If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable. That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.

*Id*. *See id*. at 987-88 (in an excessive force suit, prisoner's allegations that the guards threatened him after the beating by saying he was "lucky" because his injuries "could

8

have been much worse" failed to meet the objective prong because an inmate would not have reasonably understood from the statements that the guards intended to retaliate for his filing a grievance).

Plaintiff has failed to meet his burden in demonstrating that the threat of retaliation made administrative remedies unavailable. From the date of the incident in this action to the date when plaintiff filed this federal complaint, he filed 14 administrative appeals. Voong Decl. Ex. A; Maxwell Decl. Ex. A. This is the time frame during which plaintiff alleges he could not file an appeal due to the threat of retaliation. Plaintiff admits that he knew of certain staff members he could trust to submit his appeals. MSJ, Carter Depo at 216-18. Plaintiff also states he was aware that appeals could be submitted into a lockbox. *Id.* at 206-07.

Plaintiff has failed to present sufficient allegations to support his fear of retaliation. With respect to the first prong of *McBride*, plaintiff has not provided a basis for the court to find that he believed prison officials would retaliate against him. He fails to identify any actual threat or threatening action from any prison official. He describes general feelings of hostility and states that he received various rules violation reports for masturbation. Opposition at 5-6. He generally argues that punishment for his rules violations demonstrated retaliation, but he provides no evidence in support of this argument. Simply that plaintiff received punishments for breaking the rules does not demonstrate retaliation. Regardless, plaintiff continued to file administrative appeals for other incidents despite now claiming he feared retaliation. Nor has plaintiff shown that even if he had a basis to fear retaliation that the belief was objectively reasonable. A general hostility from prison officials due to his rules violations with no direct allegations to support a claim of retaliation is not objectively reasonable. Plaintiff has not shown any hostility or threats with respect to his use of the administrative appeal system and he continued to file administrative appeals. For all these reasons, defendants are entitled to summary judgment on the basis that plaintiff failed to exhaust his administrative remedies.

# MOTION TO DISMISS

Defendants do not argue that the due process claim is unexhausted; rather, they contend that it fails to state a claim.

**Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). All allegations of material fact are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (courts are not bound to accept as true "a legal conclusion couched as a factual allegation"). "A plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558-59, 574. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in orginal).

Review is limited to the contents of the complaint, *see Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. *See id.* (discussing Fed. R. Evid. 201(b)).

The Due Process Clause protects against the deprivation of liberty without due

process of law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Id.* Liberty interests may arise from the Due Process Clause itself, or from an expectation or interest created by prison regulations. *Id.* The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." *Id.* The existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). Such liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (interal citations omitted); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Changes in conditions relating to classification and reclassification do not implicate the Due Process Clause itself. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)) (no constitutional right to particular classification). Yet, the classification of an inmate as a sex offender may be the type of atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life that the Supreme Court in *Sandin* held created a protected liberty interest. *See Neal v. Shimoda*, 131 F.3d 818, 827-30 (9th Cir. 1997). While such a liberty interest is not created merely by the requirement that sex offenders participate in a specified treatment program, *see id.* at 830, in *Neal* the Ninth Circuit found that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections," *id.* Under these circumstances, inmates are entitled to procedural due process before being classified as sex offenders. *See id.* at 830-31 (inmates entitled to procedural protections of *Wolff v. McDonnell*, 418 U.S. 539 (1974), including notice of reasons for classification as sex offender and a hearing at which the inmate may call witnesses and present documentary evidence in his defense).

**Analysis**

Plaintiff alleges that his due process rights were violated when the punishment for his rules violation was the placing of the IEX sign on his cell door, having to wear a special jumpsuit for inmates with sex offenses and temporarily being denied visitation with his wife. These restrictions do not demonstrate an atypical and significant hardship in relation to ordinary prison life and the changes in his classification do not implicate the Due Process Clause. *See Hernandez*, 833 F.2d 1318. Unlike in *Neal*, plaintiff was not subject to a mandatory treatment program that would require procedural due process. *Id.* at 830-31. Furthermore, prisoners do not have a constitutional right to visits. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994). Defendant's motion is granted because plaintiff's allegations fail to state a claim. Plaintiff will not be provided leave to amend because amendment would be futile.

**CONCLUSION**

1. For the reasons set forth above, the motion for summary judgment and motion to dismiss (Docket No. 23) are **GRANTED** and this case is **DISMISSED** for failure to exhaust and for failure to state a claim.

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 8, 2019

PHYLLIS J. HAMILTON
United States District Judge